IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSEPH PASCIUTTI<br>*Plaintiff*<br><br>vs.<br><br>LIQUIDPISTON, INC. and<br>ALEXANDER SHKOLNIK,<br>*Defendants* | CIVIL ACTION<br><br>Case No. 3:20-cv-1243<br><br>JURY TRIAL REQUESTED<br><br>AUGUST 25, 2020 |

## COMPLAINT

### I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over this Action under 28 U.S.C. §§ 1331 and 1341 42 U.S.C. §2000e-5, insofar one or more of the matters in controversy are brought pursuant to 29 U.S.C. §§1132(a)(1)(B), the enforcement provisions of The Employee Retirement Income Security Act. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over all other claims set forth herein, in that such claims are so related to the claims over which the Court has original jurisdiction that they form part of the same case or controversy.

2. Venue in the District of Connecticut is proper because at all times relevant, Plaintiff resided in Connecticut, Plaintiff worked in Connecticut, and Defendant LiquidPiston, Inc. had its principal place of business and/or corporate headquarters in Connecticut.

### II. PARTIES

3. Plaintiff, JOSEPH PASCIUTTI, was at all times set forth herein, and remains, a resident of the Town of Southington in the State of Connecticut.

1

4. The Defendant, LiquidPiston, Inc. ("Defendant" or "LPI"), is a foreign corporation with a business address of 1291A Blue Hills Avenue, Bloomfield, Connecticut, 06002.

5. The Defendant, Alexander Shkolnik, was at all times set forth herein, and remains, a resident of the Town of Wilmington, Massachusetts.

### III. FACTUAL ALLEGATIONS

6. Plaintiff commenced employment with LPI in the position of Chief Engineer on or about May 28, 2019, pursuant to an offer issued by Alexander Shkolnik ("Shkolnik" or "Defendant Shkolnik"), Defendant's President and CEO, dated April 24, 2019 (the "Offer Letter").

7. On or about April 24, 2019, Shkolnik, on behalf of Defendant, issued the Offer Letter to Plaintiff, wherein LPI promised Plaintiff, *inter alia*, base salary, medical benefits, and grants of Stock Options governed by Defendant's "2016 Stock Option and Grant Plan." Such promised Stock Options grants included:

   a. A Base Grant, consisting of options to purchase 10,000 shares of common stock in Defendant's company at an exercise price of $0.91 per share, vesting at the rate of 25% of the shares on the first anniversary of the vesting commencement date, and 1/48th of such shares at the end of each month thereafter, yielding a 100% vestment following a period of four years of continuous employment; and

   b. Initial Period Option Bonus Grant, consisting of additional options to purchase 208 shares of common stock per month, fully vesting each month.

8. LPI's "2016 Stock Option and Grant Plan (hereinafter, the "Plan") constituted an "employee pension benefit plan" within the meaning of 29 U.S.C. § 1002(2)(A), in that such Plan, by its express terms and/or as a result of surrounding circumstances, resulted in a deferral of income by Plaintiff for periods extending to the termination of his covered employment or beyond.

9. In reliance upon the promises made to Plaintiff in the Offer Letter, made by LPI President, Alexander Shkolnik, and the proposed terms of Plaintiff's anticipated employment set forth in said Offer Letter inclusive of Stock Option Grants, Plaintiff made the decision to leave his prestigious, long-term position with United Technologies Corporation and join LPI, the Defendant, as its Chief Engineer.

10. Plaintiff accepted the terms of the Offer Letter, and commenced employment with LPI as its Chief Engineer on or about June 3, 2019.

11. Plaintiff's expected responsibilities as LPI's Chief Engineer were identified within a schedule appended to Defendant's aforesaid Offer Letter. Plaintiff's position and duties were expected to evolve as the company progressed through the development of its new "LiquidPiston" engine.

12. Plaintiff, pursuant to the terms of the Offer Letter, was to report directly to Defendant's President, Shkolnik.

13. Plaintiff, as of the time of hire, had decades' worth of experience and a proven track record in engineering leadership in jet engine development, control design, and production at multiple United Technologies Corporation divisions, and further possessed a strong background in effectively working with senior leadership and staff members to deliver results in engine design and related programs.

14. Pursuant to the terms of the Plan, Plaintiff's Base Grant of options to purchase 25% (or 2,500 of the total 10,000) shares would vest as of June 4, 2020.

15. LPI received great benefit from Plaintiff's significant industry experience and accomplishments. By way of example, Defendant, in its outward statements to potential investors, relied heavily on Plaintiff's resume and experience in seeking investment capital. Specifically, Defendant conveyed to prospective investors that "Chief Engineer Joe Pasciutti brings over 30 years of diverse technical leadership to the company, bringing new turbine engines from advance concept through production."[1]

16. In no small part due to LPI's hiring and retention of Plaintiff throughout its pursuit of investment capital, coupled with Defendant publicly utilizing Plaintiff's industry experience, qualifications, and technical expertise in its outward-facing media statements and investment offers, Defendant's valuation grew substantially, such that as of the approximate date of Plaintiff's termination, LPI reported a valuation at $51.6 million dollars.

17. As Defendant's Chief Engineer, Plaintiff implemented numerous process changes which resulted in reduced turnaround time for engineering design, analysis and testing processes. Moreover, and during Plaintiff's tenure, Defendant's demonstration LiquidPiston engine's power and efficiency increased significantly, with engine yield improving from 25% to 90%.

18. Furthermore, on account of Plaintiff's established industry contacts and relationships, Plaintiff was able to develop engine commercialization partnerships with established aero-engine manufacturers during his tenure with Defendant.

---

[1] https://www.startengine.com/liquidpiston (last accessed August 13, 2020)

4

19. Mr. Shkolnik resided in the Boston, Massachusetts area. Throughout the duration of Plaintiff's tenure, Mr. Shkolnik remained primarily an off-site manager, relying heavily upon emails and other impersonal methods of communication, infrequently attending in-person meetings to gather information or making efforts to procure first-hand observation of LPI's day-to-day operation.

20. During his tenure, Plaintiff was responsible to oversee Defendant's engineering team. As such, Plaintiff scheduled, attended, and/or ran regular management and technical meetings, during which Plaintiff effectively worked to execute LPI's priorities, dictated by Shkolnik.

21. At no time prior to the unlawful termination of Plaintiff's employment did Shkolnik discuss any dissatisfaction with Plaintiff in regard to the performance of Plaintiff's responsibilities as Chief Engineer.

22. In fact, Plaintiff regularly received positive commentary from team members, including Shkolnik himself, conveying in words or substance that Plaintiff was more pleasant to work with than his predecessor.

23. Plaintiff's predecessor as Chief Engineer, Nickerson, further complimented Plaintiff, conveying in words or substance that he had observed improvement both in team functions and in the production of the engineering department during Plaintiff's tenure.

24. Furthermore, Defendant's external customers expressed satisfaction with Plaintiff and his team's performance.

25. On or about May 15, 2020, Plaintiff completed a major design and a related detailed design review, whereupon Plaintiff received significant positive feedback from Defendant's President, Shkolnik. Again based on Plaintiff's significant industry

experience, Plaintiff had courted and utilized a host of industry experts in order to effectuate the expert review, including individuals from Pratt & Whitney and Hamilton Sundstrand, industry leaders.

26. In light of Defendant's valuation at $51.6 million, and in light of the fact that Plaintiff's stock options approached an approximate fair market value of $36.50 per share—again, due in large part to Plaintiff's contributions to Defendant as a whole—Plaintiff's compensation as contemplated by the Offer Letter substantially increased in value between the date of Plaintiff's commencement of employment and June 2, 2020.

27. At or about that time, Shkolnik came to the realization that Plaintiff's compensation package had increased significantly as the company's stock price and valuation had risen.

28. On June 2, 2020, Defendant abruptly terminated Plaintiff's employment.

29. Defendant's termination of Plaintiff's employment occurred just two days before Plaintiff's initial tranche of 2,500 stock options were scheduled to vest on June 4, 2020.

30. As of June 2, 2020, the approximate fair market value of said 2,500 options equated to $88,975.00.

31. As of June 2, 2020, the approximate yearly fair market value of options set to vest monthly thereafter equated to an additional $88,975.00.

32. At or around that same time, Plaintiff's total compensation package with the concomitant stock options equated to an approximate yearly value of $350,000.00.

33. Defendant induced Plaintiff to leave gainful employment elsewhere in order to commence employment with Defendant.

34. On June 2, 2020, Defendant terminated Plaintiff's employment on the purported basis that he was "not a good fit" for Defendant

35. Any and all reasons proffered by Defendant for the termination of Plaintiff's employment were false, and were pretext to mask its unlawful intent.

**COUNT ONE:      UNLAWFUL DISCHARGE — ERISA 29 U.S.C. § 1140**
**PLAINTIFF VS. LIQUIDPISTON, INC.**

36. LPI discharged Plaintiff for the purpose of interfering with Plaintiff's attainment of rights to which he, as a participant, was to become entitled under the Plan, in violation of 29 U.S.C. § 1140.

37. Any and all reasons LPI has proffered or will proffer purporting to justify the termination of Plaintiff's employment are false, and are pretext to mask its unlawful intent.

38. As a result of Defendant's unlawful discharge of Plaintiff, its interference with Plaintiff's rights under the Plan, Plaintiff has suffered significant financial losses and emotional distress.

39. As a result of the LPI's unlawful actions, the Plaintiff has suffered significant financial losses, including but not limited to lost wages, lost benefits, lost bonuses, lost stock options, fringe benefits, and other consequential losses.

40. Furthermore, as a result of the Defendant Company's actions, as aforesaid, the Plaintiff has incurred or will incur attorneys' fees and costs in order to secure his rights.

## COUNT TWO:     ERISA – EQUITABLE ESTOPPEL

## PLAINTIFF VS. LIQUIDPISTON, INC.

41. All prior allegations are repeated and re-alleged in this Count as if fully set forth herein.

42. Defendant made material representations and promises in its Offer Letter to Plaintiff, inclusive of Stock Option Grants and other elements of compensation contained therein.

43. Plaintiff, in reliance upon the material representations and promises contained in the Offer Letter, left gainful employment and accepted the terms contained therein.

44. As a result of Plaintiff's reliance and Defendant's unjustified and unlawfully motivated termination of his employment, Plaintiff has been damaged.

45. Injustice would prevail if the promises set forth in the Offer Letter are not enforced.

46. The Defendant has breached its obligations to the plaintiff by intentionally interfering with the plaintiff's future entitlements.

47. At the time of the termination of the Plaintiff's employment, he had a number of stock options that were scheduled to vest within days.

48. The Defendant terminated the Plaintiff in bad faith and without just cause.

49. The Defendant terminated the Plaintiff's employment to avoid payment of stock options scheduled to vest within days of its termination of Plaintiff.

50. As a result of the Defendant's actions, the Plaintiff has suffered significant financial losses and emotional distress.

51. As a result of the Defendant Company's actions, as aforesaid, and as a result of Defendant's unlawful termination of Plaintiff's employment, Plaintiff has suffered significant financial losses, including but not limited to lost wages, lost benefits, lost pension, lost bonuses, restricted stock options, fringe benefits, pension credits, lost seniority and front pay.

52. Furthermore, as a result of the Defendant Company's actions, as aforesaid, the Plaintiff has incurred or will incur attorneys' fees and costs in order to secure his rights.

**COUNT THREE:    ERISA – PROMISSORY ESTOPPEL**

**PLAINTIFF VS. LIQUIDPISTON, INC.**

53. All preceding paragraphs are hereby re-alleged as if fully set forth herein.

54. All prior allegations are repeated and re-alleged in this Count as if fully set forth herein.

55. Defendant made material representations and promises in its Offer Letter to Plaintiff, inclusive of Stock Option Grants and other elements of compensation contained therein.

56. Plaintiff, in reliance upon the material representations and promises contained in the Offer Letter, left gainful employment and accepted the terms contained therein.

57. As a result of Plaintiff's reliance and Defendant's unjustified and unlawfully motivated termination of his employment, Plaintiff has been damaged.

58. Injustice would prevail if the promises set forth in the Offer Letter are not enforced.

59. The Defendant has breached its obligations to the plaintiff by intentionally interfering with the plaintiff's future entitlements.

60. At the time of the termination of the Plaintiff's employment, he had a number of stock options that were scheduled to vest within days.

61. The Defendant terminated the Plaintiff in bad faith and without just cause.

62. The Defendant terminated the Plaintiff's employment to avoid payment of stock options scheduled to vest within days of its termination of Plaintiff.

63. As a result of the Defendant's actions, the Plaintiff has suffered significant financial losses and emotional distress.

64. As a result of LPI's unlawful actions, as aforesaid, and as a result of Defendant's unlawful termination of Plaintiff's employment, Plaintiff has suffered significant financial losses, including but not limited to lost wages, lost benefits, lost stock options, fringe benefits, lost seniority and has been deprived of gainful employment into the future.

65. Furthermore, as a result of the Defendant Company's actions, as aforesaid, the Plaintiff has incurred or will incur attorneys' fees and costs in order to secure his rights.

**COUNT FOUR:    FAILURE TO PAY WAGES – C.G.S. § 31-72**

**PLAINTIFF VS. LIQUIDPISTON, INC.**

66. All preceding paragraphs are hereby re-alleged as if fully set forth herein.

67. The Stock Options promised to Plaintiff in accordance with the Offer Letter and the Plan constituted wages in accordance with C.G.S. § 31-71a(3).

68. Defendant failed to pay Plaintiff all of the wages to which he was entitled.

69. As a result of Defendant's failure to pay Plaintiff all wages to which he was entitled, Plaintiff has sustained damages, and has incurred or will incur attorneys' fees and costs in order to secure his rights.

70. Pursuant to C.G.S. § 31-72, Plaintiff claims "twice the full amount of such wages" Defendant has unlawfully failed to pay.

**COUNT FIVE:       FRAUDULENT INDUCEMENT**

**PLAINTIFF VS. ALL DEFENDANTS**

71. All preceding paragraphs are hereby re-alleged in this Count as if fully set forth herein.

72. Shkolnik, in a deliberate and purposeful scheme and acting in both a representative and individual capacity, made knowingly false representations to Plaintiff to the effect that if he were to leave his present employ in order to join LPI as its Chief Engineer, Plaintiff would be entitled to the stock options and other benefits of employment pursuant to the Offer Letter.

73. Shkolnik knew such statements to be false at the time they were made, in that he never intended to allow Plaintiff to remain employed with LPI until such time as Plaintiff's entitlements under the Plan and/or the Offer Letter would be fully vested.

74. Rather, and upon information and belief, Shkolnik's intent was to take advantage of Plaintiff's industry experience, resume, and good name in order to seek and cultivate investment capital, increase the valuation of LPI to his own benefit, and terminate Plaintiff prior to Plaintiff's entitlements under the Plan and Offer Letter had vested.

75. Shkolnik's false representations and statements were made in order to induce Plaintiff to leave gainful employment elsewhere and join LPI.

76. Plaintiff justifiably relied on Shkolnik's statements, to his substantial loss and detriment.

**COUNT SIX:**        **NEGLIGENT MISREPRESENTATION**

**PLAINTIFF VS. ALL DEFENDANTS**

77.     All preceding paragraphs are hereby re-alleged in this Count as if fully set forth herein.

78.     Shlolnik, acting in a representative and individual capacity, and in a deliberate and purposeful scheme, made representations, which he knew or should have known were false, to Plaintiff to the effect that if he were to leave his present employ in order to join LPI as its Chief Engineer, Plaintiff would be entitled to the stock options and other benefits of employment pursuant to the Offer Letter.

79.     Plaintiff reasonably relied on Shkolnik's statements, to his substantial loss and detriment.

**COUNT SEVEN:**    **WRONGUL DISCHARGE IN VIOLATION OF PUBLIC POLICY**

**PLAINTIFF VS. LIQUIDPISTON, INC.**

80.     All preceding paragraphs are hereby re-alleged in this Count as if fully set forth herein.

81.     Defendant terminated Plaintiff in a deliberate attempt to unlawfully withhold earned wages.

82.     Defendant's termination of Plaintiff is in violation of the State of Connecticut's longstanding policy against the wrongful withholding of an employee's wages, as enunciated in C.G.S. §§ 31-71c(b) and 31-71e, which state, in pertinent part, that "Whenever an employer discharges an employee, the employer shall pay the employee's wages in full not later than the business day next succeeding the date of such

discharge," and "No employer may withhold or divert any portion of an employee's wages...."

83. As a result of LPI's unlawful conduct, as aforesaid, Plaintiff has suffered significant financial losses, including but not limited to lost wages, lost benefits, lost stock options, fringe benefits, lost seniority, and Plaintiff has been deprived of gainful employment into the future.

**COUNT EIGHT:  BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

**PLAINTIFF VS. ALL DEFENDANTS**

84. All preceding paragraphs are hereby re-alleged in this Count as if fully set forth herein.

85. LPI and Shkolnik breached the implied covenant of good faith and fair dealing by purposefully timing the unlawful termination of Plaintiff, intending to avoid the imminent vesting of stock options and other contractual entitlements due to Plaintiff.

86. As a result of the Defendants' actions as aforesaid and terminating the Plaintiff's employment, the Plaintiff has suffered significant financial losses, including but not limited to lost wages, lost benefits, lost pension, lost bonuses, restricted stock options, fringe benefits, pension credits, lost seniority and front pay.

87. As a result of the Defendants' actions as aforesaid and terminating the Plaintiff's employment, the Plaintiff has suffered and will continue to incur damages, including but not limited to, mental injuries and the loss of the ability to enjoy life's pleasures and activities.

88. Furthermore, as a result of the Defendants' actions, as aforesaid, the Plaintiff has been forced to spend legal fees and costs in order to obtain the rights to which he is entitled.

**COUNT NINE:** **TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY / CONTRACTUAL OBLIGATIONS**

**PLAINTIFF VS. SHKOLNIK**

89. All preceding paragraphs are hereby re-alleged in this Count as if fully set forth herein.

90. Plaintiff, by virtue of his employment with LPI, had a business relationship with LPI, of which Skolnik was patently aware.

91. Defendant Shkolnik intentionally, maliciously, and without justification, interfered with Plaintiff's business relationship with LPI by wrongfully terminating Plaintiff's employment, intending to deprive Plaintiff of the benefits to which Plaintiff was, or would be, entitled pursuant to that relationship.

92. As a result of Defendant Shkolnik's tortious interference, Plaintiff has sustained actual loss.

**WHEREFORE**, Plaintiff prays for the following relief:

1. All awardable and/or equitable relief pursuant to Counts One, Two, and Three;
2. Money damages for lost wages, benefits, and other compensation;
3. Double damages pursuant to C.G.S. § 31-72;
4. Reinstatement, or in lieu thereof, front pay;
5. Restitution as to Count Five;
6. Reasonable attorneys' fees and Costs of this Action; and
7. All other awardable relief.

>           PLAINTIFF,
>           JOSEPH PASCIUTTI
>
> BY: _____
>           Matthew D. Paradisi (CT29915)
>           Angelo Cicchiello (CT06503)
>           Emanuele R. Cicchiello (CT27118)
>           Cicchiello & Cicchiello, LLP
>           364 Franklin Avenue
>           Hartford, CT 06114
>           Phone:  860-296-3457
>           Fax:  860-296-0676
>           Email:  mparadisi@cicchielloesq.com
>                      angelo@cicchielloesq.com
>                      manny@cicchielloesq.com